## The BANK of PENNSYLVANIA for the use of ECHELMAN and another, *against* WINGER and another, with notice, &c.

### IN ERROR.

The possession of money by the sheriff arising from the sale of lands, sufficient to satisfy a judgment earlier than that under which the sale was made, is not *per se,* a satisfaction of such earlier judgment. The prior judgment creditor may waive his priority in favour of a subsequent one, without working an extinguishment of his judgment, which may be satisfied out of any other land originally bound by it. And, if the subsequent judgment creditor become the assignee of the first judgment, he succeeds to all the rights of the assignor.

THIS case came before the court on a writ of error to the Court of Common Pleas of *Lancaster* county, in which it was a *Scire Facias* upon a judgment issued by the plaintiffs in error, The Bank of *Pennsylvania,* for the use of *Jacob Echelman* and *Benjamin Vernor,* against *Jacob Winger* and *Peter Reidebaugh,* with notice to *Catherine* and *Elizabeth Stoolfoos.*

As it appeared from the record, the case was thus:—*Jacob Echelman,* on the 9th of *April,* 1822, obtained a judgment against *Peter Reidebaugh,* one of the present defendants, for seven thousand eight hundred and fifty dollars. Upon this judgment he issued a *Fieri Facias* to *April* Term, 1822, under which the defendant's real estate was levied upon, which, by virtue of a *Venditioni Exponas,* returnable to *August* Term, 1822, was sold on the 28th of

(The Bank of Pennsylvania for the use of Echelman and another, *v.* Winger and another, with notice, &c.)

*June,* 1823, for eight thousand five hundred and five dollars. The conditions of sale stated, that the property was to be sold for lawful money of the *United States,* to be paid on or before the 16th of *August,* 1823, and that the sheriff would execute a deed at the next *August* court, conveying to the purchaser all the estate of *Reidebaugh* in the premises. The purchaser executed a bond for the purchase money, to which *Echelman* was a witness. Of the proceeds of the sale, *Echelman* received eight thousand two hundred and thirty-three dollars and seventy-eight cents, and the residue went to satisfy three small judgments of an earlier date. At *January* Term, 1822, a judgment was entered in favour of *Benjamin Vernor* against *Peter Reidebaugh,* conditioned for the payment of two thousand six hundred and fifty-one dollars. Prior to the judgment under which the sale took place, viz. on the 27th of *November,* 1820, the Bank of *Pennsylvania* had obtained a judgment against *Jacob Winger* and *Peter Reidebaugh.* It appeared in evidence that *Reidebaugh* had endorsed notes for *Winger,* which were discounted by the Bank of *Pennsylvania* and the Farmers' Bank. To indemnify him against these endorsements, and also to secure payment for a quantity of grain, *Winger* gave to *Reidebaugh* a bond for eight hundred dollars, upon which judgment was entered on the 28th of *December,* 1819. This judgment was marked satisfied on the 26th of *February,* 1820, the amount having been paid by the assignees of *Winger,* who had made an assignment for the benefit of his creditors, and whose property yielded more than enough to pay his debts.

On the 29th of *August,* 1823, the Bank of *Pennsylvania* assigned their judgment against *Jacob Winger* and *Peter Reidebaugh,* to *Jacob Echelman* and *Benjamin Vernor,* who issued a *Scire Facias* to revive it, returnable to *November* Term, 1823, with notice to *Catherine* and *Elizabeth Stoolfoos.* Judgment in the *Scire Facias* having been obtained, a *Fieri Facias* on which the real debt was marked three hundred and eleven dollars, issued to *January* Term, 1824, from the return of which it appeared, that the debt, interest, and costs, had been paid by the assignees of *Jacob Winger,* under his voluntary assignment, made for the benefit of his creditors.

On the 1st of *May,* 1824, on motion of the counsel of *Winger's* assignees and affidavit filed, the court granted a rule to show cause why the money paid into the hands of the sheriff, on the execution in this case, should not be repaid to the assignees, the execution set aside, the judgment opened and the defendants let into a defence. After argument, the court decided, that the defendants should be let into a defence; that the execution should remain as a security, and that the money paid under it should remain in court to abide the event of the suit. The cause was tried on the plea of payment, to ascertain whether any thing was due on the original judgment.

(The Bank of Pennsylvania for the use of Echelman and another, *v.* Winger and another, with notice, &c.)

On the trial, the court below were requested by the counsel both of the plaintiffs and the defendants, to instruct the jury on certain points, which they respectively submitted, and to file their charge of record.   In order to understand the case, it will be necessary that these points, together with the charge of the court, and the errors assigned in it, should be fully set out.

The plaintiffs' points were as follows; viz:—

" 1st. That a payment to a sheriff on an execution in his hands, is a payment to the plaintiff in the same, and the persons paying the money to the sheriff never can recover the same back in any form of action, and therefore the defendants in this case have no right to a return of the money paid.

"2d. That *Henry D. Oberholtzer*, *Henry Carpenter*, and *Christian Winger*, being the assignees of *Jacob Winger*, who was the principal in the note on which this suit is brought, and the estate of the said *Jacob Winger*, in the hands of the said assignees, being sufficient to pay all his debts and considerably more, and the estate of the said *Peter Reidebaugh*, the other defendant, surety or endorser being insufficient for that purpose; having paid off this execution, which in equity and good conscience, they ought to have done, have no right to a return of the money so paid, and the verdict must therefore be for the plaintiffs.

" 3d. That the money being made and paid, as appears by the return of the sheriff, was so paid under a full knowledge of all the circumstances of the case, and with ample means for obtaining such knowledge, on an execution issued on a judgment of a court of competent jurisdiction, and therefore cannot be recovered back again in any form of action, nor cannot be refunded to the persons paying the same, and therefore the plaintiff is entitled to recover.

4th. That although the amount of the sales of the real property of *Peter Reidebaugh*, who was the endorser for *Jacob Winger*, may have been sufficient to pay the judgment in this case, yet the plaintiff or his assignee had his option to pursue the estate of *Jacob Winger*, the principal, if he saw fit so to do, for the payment, and was not bound to take his money from or out of the sales of the property of the endorser, the principal having sufficient funds to pay; and the defendant, *Jacob Winger*, or rather his assignees, having, in consideration of there being sufficient funds, paid the amount of the execution and costs to the sheriff, did no more than in justice and equity they ought to have done; therefore they have no right to have the money refunded to him or them, and the verdict must be for the plaintiffs.

"5th. That if the assignees had, previously to paying the debt and costs on this execution, paid the amount of the note on which this judgment was obtained, to *Peter Reidebaugh*, the endorser, trusting to his honour to discharge the same, such payment was in fraud of the creditors and in their own wrong, and could not raise any

equity in their favour, nor could it be permitted legally to operate as an injury to the subsequent judgment and mortgage creditors of the said *Peter Reidebaugh.*

" 6th. That if the equity is equal, the law will not interfere between the parties, but to permit them to remain in the same situation they now are in."

The following were the defendants' points:

" 1st. That under the laws of *Pennsylvania,* the original judgment on which this *Scire Facias* issued, was on the 28th of *June,* 1823, satisfied and extinguished; the sheriff on that day, having sold the real estate of *Peter Reidebaugh,* one of the defendants in this suit, for eight thousand five hundred and five dollars, a sum more than sufficient to pay that judgment and all prior incumbrances.

" 2nd. That as *Jacob Echelman* was a witness to the single bill for eight thousand five hundred and five dollars, executed by the purchaser of *Peter Reidebaugh's* real estate, sold at sheriff's sale, he had full legal notice, when, on the 29th of *August,* 1823, he and *B. Vernor,* took an assignment of the judgment from the bank, that by the law of *Pennsylvania* it was paid and extinguished.

" 3rd. That if the jury believe the testimony of *Peter O. Donnel,* it would be against equity and good conscience to find a verdict for the plaintiffs in this case."

" CHARGE OF THE COURT.—In this case, the Bank of *Pennsylvania,* on the 27th day of *November,* 1820, obtained a judgment against *Jacob Winger* and *Peter Reidebaugh.* This judgment was afterwards assigned to *Jacob Echelman* and *Benjamin Vernor* on the 29th of *August,* 1823.

*Jacob Echelman,* on the 9th of *April,* 1822, obtained judgment against *Peter Reidebaugh,* one of the defendants in the suit of the bank, for seven thousand eight hundred and fifty dollars. On this judgment a *Fieri Facias* issued, under which the real estate of *Peter Reidebaugh* was levied upon and condemned. A *Venditioni Exponas* issued. The conditions of the sale which took place upon this *Venditioni Exponas,* stated that the premises were to be sold for lawful money of the *United States,* to be paid at or upon the 16th of *August,* 1823, and the sheriff would execute a deed at the next *August* court, conveying all the estate, right, and title of *Peter Reidebaugh,* consisting of his right, title, and interest of, in and to a certain tract of land containing one hundred and three acres, (more or less,) situate in *Leacock* township, adjoining lands of *William Brinton, Jacob Musser,* and others, with the improvements thereon erected. It was struck off on the 28th of *June,* 1823, to *Jacob Musser* for the sum of eight thousand five hundred and five dollars, which was paid by the purchaser. Mr. *Echelman* was a witness to the bond given for the puchase money,

(The Bank of Pennsylvania for the use of Echelman and another, *v.* Winger and another, with notice, &c.)

and this is evidence of notice to him of the state of the case.  The judgment of the Bank of *Pennsylvania* being first in point of priority was entitled to be paid out of this money, and the sheriff having received the amount of this purchase money, and being bound to pay the liens according to their priority, the defendants contend that the judgment of the Bank of *Pennsylvania* was thereby satisfied and extinguished.  *Jacob Echelman* and *Benjamin Vernor*, notwithstanding these proceedings, obtained from the bank on the 29th of *August*, 1823, an assignment of their judgment against *Winger* and *Reidebaugh*, issued a *Scire Facias* on it with notice to *Catherine* and *Elizabeth Stoolfoos*, obtained a judgment and issued a *Fieri Facias* to *January* Term, 1824, for the sum of three hundred and eleven dollars, with interest from the 24th of *November*, 1823.

"On this execution there is an endorsement, "that the debt, interest, and costs, were paid by *Oberholtzer* and *Winger*, who were the assignees of *Jacob Winger*, under a voluntary assignment, made by him for the benefit of his creditors."

"Now the allegation of the defendants is, that the judgment of the bank having been satisfied and extinguished by the sale of *Reidebaugh's* property and the payment of the proceeds into the hands of the sheriff, all the subsequent proceedings on that judgment were irregular and void, and the money paid on the execution was forced from the assignees; that it was paid to them in their own wrong, and the plaintiffs not being entitled to receive it, it should be returned to them; and these are the questions for you to try and determine under the testimony in this cause.  Other matters than I have mentioned, have been given in evidence, which the parties judge material, and which it will be proper for you to consider and determine.

"The record shows that *Peter Reidebaugh*, on the 28th of *December*, 1819, obtained a judgment against *Jacob Winger* for eight hundred dollars: this judgment was marked satisfied on the 26th of *February*, 1820.  It appears in evidence that the bond on which this judgment was entered, was given by *Winger* to *Reidebaugh*, for some grain, and to indemnify him from the notes due the *Pennsylvania* Bank and the Farmers' Bank, and that the amount was paid off by the assignees of *Jacob Winger*, who, it seems, had in their hands more than sufficient to pay all his debts.  If *Reidebaugh*, when he received the money, had appropriated it as he ought to have done, there would have been no question in the case, and we would have been saved the trouble of this trial; but he did not pay it, and retained the money.

"On this point of the case the defendants contend, that if you believe the testimony of *Peter O. Donnel*, it would be against equity and conscience to find a verdict for the plaintiff.  And, on the part of the plaintiffs, that if the assignees had, previously to paying the debt

(The Bank of Pennsylvania for the use of Echelman and another, *v.* Winger and another, with notice, &c.)

and costs on this execution, paid the amount of the note on which judgment was obtained to *Peter Reidebaugh*, the endorser, trusting to his honesty to discharge the same, such payment was in fraud of the creditors and in their own wrong, and could not raise any equity in their favour, nor could it be permitted legally to operate as an injury to the subsequent judgment and mortgage creditors of the said *Peter Reidebaugh*.

"It appears to me that quite as much stress as was necessary was laid upon this payment on both sides as it respects the question before the court. It was an unfortunate payment on the part of the assignees, and it does not appear to me how it can have much operation either against them or in favour of the plaintiffs, who were not privy to it, nor had any concern in it. If the question were made as it affects *Reidebaugh*, it would have great weight. If he were resisting payment it would be a complete answer. It would then manifestly show he was no longer to be considered in the light of a surety. If no injury were done to others, equity would be clearly in favour of permitting the money to come out of *Reidebaugh's* estate.

"The case depends principally, if not altogether, upon the question how far the law considers the proceedings under the execution of Mr. *Echelman* as a satisfaction and extinguishment of the judgment of the bank.

"The plaintiffs contend, that although the amount of the sales of the real property of *Peter Reidebaugh*, who was endorser for *Jacob Winger*, may have been sufficient to pay the judgment in this case, yet the plaintiffs or their assignees had their option to pursue the estate of *Jacob Winger*, the principal, if they saw fit so to do for payment, and were not bound to take their money out of the sales of the property of the endorser, the principal having sufficient funds to pay, and the defendant, *Jacob Winger*, or rather his assignees, having, in consideration of there being sufficient funds, paid the amount of the execution and costs to the sheriff, did no more than in justice and equity they ought to have done, and therefore they have no right to have the money refunded to them, and your verdict must be for the plaintiffs.

"It appears to the court, that the plaintiffs had no such option as is contended for, and that they were bound to take the money made upon the execution if they were entitled to it, of which there can be no doubt; and it is the opinion of the court, that under the laws of *Pennsylvania*, the original judgment on which the *Scire Facias* issued, was, on the payment of the money to the sheriff on the execution against *Reidebaugh*, satisfied and extinguished, the sheriff having received a sum more than sufficient to pay that judgment and all prior incumbrances.

"The counsel for the plaintiff have requested the court to instruct you as in Nos. 1, 2, and 3. The money being paid into court on an

(The Bank of Pennsylvania for the use of Echelman and another, *v.* Winger and another, with notice, &c.)

execution, and waiting the decision of the court and jury, none of the parties are precluded from any remedy which they before had. The rules relative to voluntary payment do not apply. The matter is open to all the law and equity of the case, and the payment neither lessens or enlarges the rights of the plaintiffs or defendants.

"You will consider the evidence and arguments in the case, and render such verdict as you think right. If you are of opinion that the evidence shows an extinguishment of the judgment, you will find for the defendants, otherwise you will find for the plaintiffs."

The errors assigned in this court were,

"1st. The court charged the jury on the fourth point submitted by the plaintiff as follows, to wit: "It appears to the court that the plaintiffs had no such option as contended for, and that they were bound to take the money made upon the execution, if they were entitled to it, of which there can be no doubt; and, it is the opinion of the court that under the law of *Pennsylvania*, the original judgment on which this *Scire Facias* issued, was, on the payment of the money to the sheriff on the execution against *Reidebaugh*, satisfied, and extinguished; the sheriff having a sum more than sufficient to pay that judgment and all prior incumbrances:" in the whole of which there is error.

"2nd. The court charged the jury on the fifth point of the plaintiffs, and third and last of the defendants: "It appears to me that quite as much stress as was necessary was laid upon this payment on both sides, as it respects the question before the court. It was an unfortunate payment on the part of the assignees, and it does not appear to me how it can have much operation, either against them or in favour of the plaintiffs, who were not privy to it, or had any concern in it. If the question were made as it might affect *Reidebaugh*, it would have great weight; if he was resisting payment, it would be a complete answer. It would manifestly show he was no longer to be considered in the light of security, if no injury was done to others. Equity would be clearly in favour of permitting the money to come out of *Reidebaugh's* estate." In this there is error, and it is not an answer to the points, and was calculated to mislead the jury.

"3rd. That the first, second, third, and sixth points submitted by the plaintiffs, are not answered by the court, although very material to the matter in controversy, and so far as they are answered there is error in the answer.

"4th. The general errors."

*Evans* and *Norris*, for the plaintiffs in error, cited 1 *Johns. Ch. Rep.* 410, 512. *The Commonwealth* v. *Miller's Administrators*, 8 *Serg. & Rawle*, 458. *Patterson* v. *Swan*, 9 *Serg. & Rawle*, 16. *Barnet* v. *Washebaugh*, 16 *Serg. & Rawle*, 414.

(The Bank of Pennsylvania for the use of Echelman and another, *v.* Winger and another, with notice, &c.)

*Morris* v. *Tarin,* 1 *Dall.* 147.    Same v. *Same,* 2 *Dall.* 115.    1 *Day,* 130.    1 *Esp.* 5, 16.

*W. Hopkins,* for the defendants in error, cited 2 *Bac. Ab.* 739. *Harris* v. *Fortune,* 1 *Binn.* 125.    *Moliere's Lessee* v. *Noe,* 4 *Dall.* 450.    Hunt v. *Breading,* 12 *Serg. & Rawle,* 41.    *Cowden* v. *Brady,* 8 *Serg. & Rawle,* 508.    *Whart. Dig.* 90, *pl.* 4. *Lighty* v. *Brenner,* 14 *Serg. & Rawle,* 132, 133.    *Gilb Law of Executions,* 25, 26.    2 *Saund.* 47, *a. n.* 1.    2 *Bac. Ab.* 720.    *The Bank of North America* v. *Fitzsimons,* 3 *Binn.* 358.    *Auwerter* v. *Mathiot,* 9 *Serg. & Rawle,* 403.    2 *Johns. Ch. Rep.* 443.

The opinion of the court was delivered by

GIBSON, C. J.—It was long a moot point whether the sale of land on execution would discharge a prior lien; but I believe no one ever suspected that it would discharge the debt.    Such a consequence could be produced only by treating the debt and its lien as inseparable.    The lien is, however, but a security which may be released either before or after a sale, and, as any other security, without affecting the existence of the debt.    By a sale, the purchase money is substituted for the land; and as it is withdrawn from the control of the debtor, and put within that of the lien creditors, I admit that they are bound to look to the application of it, insomuch that a loss of any part of it, will have to be borne by him whose act occasioned it: in other words, that the debtor may, in equity and conscience, consider whatever has perished in the hands of the sheriff, as actually paid to him who is entitled to receive it.    But can he do so in respect of what has gone into his own pocket, or, what is the same thing, in ease of his debts?    It never has been supposed— certainly it never has been decided—that he can.    Where a creditor has had two funds, we have prevented him from frustrating the lien of another who had but one; yet that could not be done if the rights of the parties were fixed by the sale; for the prior judgment creditor would be paid by operation of law, and before the court could interpose.    *Hunt* v. *Breading* (12 *Serg. & Rawle,* 37,) is cited to show that a levy to the value of the debt, is *per se,* satisfaction of the execution on which the levy was made.    It would be more to the purpose to show that it discharges *other* executions which bind the goods.    If such were the law, a multitude of cases would necessarily have arisen under it; and the total absence of decision on the subject, is satisfactory evidence that the principle does not exist.    Surely a right to priority of payment may be waived without waiving that of which it is but an accident.    A creditor may release the land without releasing the debt; and why not the purchase money, which is in the place of the land?    It seems to me he does no more when he waives his preference in favour of those who claim under the debtor by title subsequent.    It is a principle of common sense, which has been embodied as a maxim, that any one may waive a right created for his own benefit.    What injury can it do any one?

(The Bank of Pennsylvania, for the use of Echelman and another, *v.* Winger and another, with notice, &c.)

Surely *Reidebaugh*, whose proper debt was paid with his own money, could not object to the waiver of preference by the bank: and let us see whether *Winger*, his co-debtor, has, any better right to do so.

*Winger* and *Reidebaugh* originally stood in the relation of principal and surety; so that the refusal of the bank to take satisfaction out of the land of the surety, was in furtherance of the equity between the debtors themselves; and to this *Reidebaugh*, the surety, could not object. But, previous to this *Winger* had put into his hands funds to discharge the whole debt, which *Reidebaugh* misapplied; and the original relation between them, therefore, was, in fact, reversed. But of this the bank was not apprized, and it was therefore justifiable in acting in conformity to the equity of the original relation. It waived its preference in favour of a surety to pursue the principal—the very thing that a court of equity would have compelled it to do. I will not stop to inquire whether the relation of principal and surety is dissolved by a judgment at law, although the negative of the question is sustained by a solemn decision of this court, and there can be no reason why the fixing of the parties at law should absolve the principal from the moral obligation to protect his surety. For the purposes of the argument I will admit that the relation is extinguished. The consequence is that *both are* PRINCIPALS, and stand in equal equity as between themselves. How then could *Winger* object to the waiver of its preference by the bank, if *Reidebaugh* could not? A creditor may collect his debt from either of two principal debtors, or from both, at his election. If then the sale by the sheriff were not payment *per se*, the bank had nothing in its hands but the *means* of actual payment, which it is not bound to retain in favour of any one but a surety. This principle is well settled both in *Pennsylvnia* and *England*. The *Commonwealth* v. *Miller's Administrators* (8 *Serg. & Rawle*, 457.) *Reed* v. *Garvin* (12 *Serg. & Rawle*, 103.) The bank then might well permit the proceeds of *Reidebaugh's* land to go to his use without injury to *Winger*, who was in no aspect entitled to be treated as a surety, and who had no other right to object than that of *Reidebaugh* himself.

Thus far I have considered the question as if it were between the defendants and the bank. The judgment is, however, owned, in part, by *Echelman*, the plaintiff in the judgment on which *Reidebaugh's* land was sold; and the question is whether he did not stand in, at least, as favourable a situation as did the bank. The case is just this: the bank had a judgment against two, which was bought in by a younger judgment creditor, to enable him to give a preference to his judgment against one of them. I can see nothing wrong in that. An assignee for valuable consideration, succeeds to all the rights of the assignor. Even an assignee, with notice, succeeds to the rights of a purchaser without it, because, having paid for the advantage arising from the ignorance of the assignor, he is entitled

(The Bank of Pennsylvania, for the use of Echelman and another, *v.* Winger and another, with notice, &c.)

to the benefit of it.    If then the bank might have used its judgment, so as to favour *Echelman,* he acquired the same capacity; for when distinct rights concur in the same person, they are to be treated as if they existed separately in different persons.    So far was it from being unconscionable in him to possess himself of the means and capacity of the bank, that a court of equity would have given him the benefit of them.    "If," says Chancellor KENT, "a creditor has a lien on two parcels of land, and another creditor has a lien, of a younger date, on one of these parcels only, *and the prior creditor* elects to take his whole demand out of the land on which the junior creditor has a lien, the latter will be entitled either to have the prior creditors thrown upon the other fund, or to have the prior lien assigned to him, and to receive all the aid it can afford.    (*Cheesboraugh* v. *Millard,* (1 *Johns. Ch.* 412.)    I cite this case because it contains a principle, in every particular, applicable to the case before us, and also references to the authorities. *Echelman,* therefore, could have compelled the bank to exhaust its means of obtaining satisfaction from the lands of *Winger;* or, on payment of the debt, to assign its lien.    It has voluntarily done the latter; and *Echelman* brings, in aid of the legal capacity of the bank, the equity of a junior judgment creditor to have that capacity exerted for his advantage.    It seems to me that, independent of all other considerations, this is decisive in his favour.    I am therefore of opinion that the judgment be reversed.                                    Judgment reversed.