SAMUEL FINNEY'S administrators, *against* the COMMON-WEALTH OF PENNSYLVANIA, for the use of JOHN ALLEN.

#### IN ERROR.

Lien creditors are to look to the application of the fund on which they have a lien, at their peril: every thing, which a due attention to their interest would have entitled them to receive, being considered as paid by operation of law, as regards the debtor.

The defendant in a judgment on a recognizance for the price of land, taken at a valuation in the Orphans' Court, gives security for the stay of execution allowed by the act of assembly; after which the land is sold by the sheriff, and the money brought into court. The plaintiff, and other persons entitled, agree that the debts of a deceased brother, who died in the lifetime of the father, should be paid out of his estate, as liens, although in point of fact they were not liens, and the proceeds of sale are thus exhausted, and not applied to pay the judgment, which was a lien; *Held:* That the liability of the surety on the recognizance was discharged, and the agreement of the defendant in the judgment to the misapplication of the fund will not, as respects the surety, alter the case.

ERROR to the Court of Common Pleas of the county of Dauphin. This was a *scire facias* at the suit of the *Commonwealth of Pennsylvania*, for the use of *John Allen*, one of the heirs and legal representatives of *Joseph Allen*, deceased, against *Ann Finney*, *Thomas Finney* and *William Finney*, administrators of *Samuel Finney*, deceased, bail of *James Allen*, issued upon a recognizance entered into by *Samuel Finney*, as the surety of *James Allen*, to obtain the stay of execution under the act of assembly, upon a judgment in favour of the plaintiff against the said *James Allen* and *Christian Forney*. This judgment was obtained on a recognizance given by *James Allen*, with the said *Forney* as his security, in the Orphans' Court, upon taking the real estate of his father, *Joseph Allen*, deceased, at the appraisement. The recognizance, on which this *scire facias* issued, was entered into by *James Allen*, the defendant, on the 3d of January, 1820; and the plaintiff in the judgment, to December term, 1820, issued an execution thereon, which was levied on the land of *James Allen*, and that was sold for three thousand and fifty dollars, which was brought into court, and auditors appointed to ascertain the debts due by *Joseph Allen*, deceased. These auditors reported the debts due by the estate of *Joseph Allen*, deceased, which amounted to the sum of seven hundred and twenty-eight dollars and twenty-five cents; and also, that by an agreement of the surviving heirs and legatees (of whom the plaintiff *John* was one,) of the said deceased, in writing, it was stipulated that the executors of the said deceased should pay the debts of *Tristram Allen*, one of the sons of *Joseph*, who died in his fathers lifetime, out of the estate of the said *Joseph*, and that considering the debts of *Tristram*, under this agreement, as the debts of *Joseph*, they reported those debts. They amounted to the sum of two thousand four hundred and fifty

Samuel Finney's administrators *v.* the Commonwealth of Pennsylvania, for the use of John Allen.

dollars; and among them there was a judgment in favour of *Samuel Finney*, the defendant's intestate, for one hundred and thirty-six dollars and sixty-eight cents. The report on the 24th March, 1823, was confirmed by the court, and a decree made that the money should be paid over according to the report.

This *scire facias* was brought to April term, 1823, and a verdict under a charge of the court favourable to the plaintiff, which was excepted to, having passed for the plaintiff, error was brought by the defendant.

*Fisher*, for the plaintiff in error, argued, that the application of the proceeds of the sale of the real estate of *James Allen*, to the payment of the debts of *Tristram*, (which were no lien on the fund,) by the agreement of the plaintiff, instead of applying them to pay his judgment against *James*, which was a lien, discharged the liability of the defendant on his recognizance upon that judgment.

Any act of the obligee which affects the surety will discharge him. *Commonwealth* v. *Miller*. 8 *Serg. & Rawle*, 452. *Diermond* v. *Robison*, 2 *Yeates*, 324. Here the means of satisfaction were in the hands of the plaintiff, he parted with them, and cannot now resort to the surety. *Ludlow* v. *Simond*, 2 *Caines Cases in Error*, 29. 30. By any act which changes the situation of the surety he is discharged. *Rathbone* v. *Warren*, 10 *Johns. Rep.* 588. 590. 3 *Wils.* 539. *Phillips* v. *Thompson*, 2 *John Ch Rep.* 418. *Bellas* v. *Haas*, 16 *Serg. & Rawle*, 252.

*Douglas* and *Elder*, contra.

The opinion of the court was delivered by

GIBSON, C. J.—In the bank of *Pennsylvania* v. *Winger*, 1 *Rawle*, 295, it was held, that, lien creditors are to look to the application of the fund at their peril, every thing which a due attention to their interest would have entitled them to receive, being considered as paid by operation of law as regards the debtor. So little was this principle doubted that some of the judges inclined to think it superior to the equity of a creditor who has but one fund, against a prior creditor who might otherwise resort to either of two; and it was barely held that it is not. But no one entertained the least doubt that where the creditor is entitled to satisfaction out of the proceeds of the land both at law and in equity, a loss shall be borne by him whose supineness occasioned it; much more so, where it has been produced by his positive agency. What then is the case here? The defendant in a judgment on a recognizance for the price of land taken at a valuation in the Orphans' Court, gives security to entitle himself to the stay of execution allowed by the act of assembly, after which the land is sold by the sheriff and the money brought into court. The plaintiff and the other persons entitled to the estate of the decedent, appear before auditors appointed to report the state of the

(Samuel Finney's administrators *v.* the Commonwealth of Pennsylvania, for the use of John Allen.)

liens, and agree that the executors of a deceased brother who had died in the lifetime of their father, should pay his debts out of the estate, in consequence of which, these debts are reported and paid as liens, although indisputably not so in fact; and the proceeds of the sale being thus exhausted, the plaintiff proceeds on the recognizance given to obtain a stay of execution. Now, to say nothing of the rule which protects a surety, where the creditor has parted with the means of obtaining satisfaction from the principal, it is plain, here, that if the levy and sale were actual satisfaction of the original judgment, there could be no breach of the condition of the recognizance. But no one will pretend that the plaintiff could have had further recourse to the original debtor, had he not consented before the auditors, to apply the proceeds of his land to the payment of his deceased brother's debts. But he had no right thus to consent, in prejudice of the rights of his surety for whose indemnity the land stood pledged by the lien of the judgment, to the benefit of which he would have become entitled by payment of the debt, but of which benefit he will be deprived, if he is compelled to pay it now, after the fruits of the lien have been swept away by a misapplication of them. The consent of the original defendant, then, being fraudulent, is to be laid out of the case, and the original judgment treated as if it were satisfied even as to him; and if so, it would be strange, if payment by him would not discharge the debt in favour of his surety. Any other construction would enable the children to manage matters so as not only to enjoy the full benefit of their father's estate, but to cast the burthen of a deceased brother's debts upon a stranger; and this monstrous result would be established by confirming the judgment of the court below. On the other points touched, but not pressed, we deem it unnecessary to express our opinion.

*Rogers J.* and *Huston J.* did not hear the argument, and took no part in the judgment.

Judgment reversed.