## WARREN *v.* SENNETT et al.

A. and B. purchased land from C., and gave their joint bond and mortgage. They then partitioned, and C. agreed to proceed at law on his securities, purchase the land at a sheriff's sale, and reconvey to A. and B. according to their partition, receiving their separate securities for the purchase money. Before the sheriff's sale, C. refused to perform the contract, in consequence of B.'s insolvency. It was then agreed, with the assent of B., that the sale should be made, and B.'s lot conveyed to A., who joined as security with B. in a bond to C., on which judgment was confessed—B. having the privilege of paying the bond and taking the land at any time within one year. The bond was given and judgment entered thereon. Prior to the sheriff's sale and the conveyance by C. to A., (but whether before or after *the new agreement, it did not appear,)* D. had purchased other land from B., on which the judgment to C. was a lien. *Held,* that as D. did not assent to the agreement, A. having paid the amount of the judgment which was assigned to him, had no equity to levy the amount paid by him out of the land purchased by D., although he agreed that, on being permitted to do so, B. or D. might redeem the land conveyed by C. to A., according to the original agreement, within six months.

A principal could not demand execution of a judgment against his own vendees in ease of the land held by himself, and his surety paying the money, stands in the same position as to such vendees.

In error from the Common Pleas of Erie county.

*Sept.* 29. This was an issue directed to determine the amount due on a judgment, and to try the right of the assignee of this judgment to proceed for the recovery of the money; and whether it was satisfied in fact or in law as to one or both of the assignees; with leave for the court to mould the issue to meet the equities of the case.

On the trial, it appeared that in February, 1836, Warren conveyed lot No. 2045 to Williams, Graham, Cochran, and James Sennett, in consideration of $25,000. Five thousand dollars were paid, and the balance secured by a bond and mortgage, payable in ten annual instalments. In February, 1837, the purchasers partitioned by deed, James Sennett taking No. 1, valued at $9500; Williams No. 2, at $4840; Graham No. 3, at $4440; and Cochran No. 4, at $6220. Judgment bonds were exchanged as indemnity for the amount each was to pay to Warren on the original purchase. The first instalment of that debt was paid by the purchasers equally. That of 1837-8 was paid according to the respective liabilities under the partition. The parties entered, and Sennett improved his lot. In the spring of 1842 the parties made an arrangement with Warren, by which he was to sell the lot at sheriff's sale, purchase it in, and execute new deeds for the parts of the lot held in severalty, according to their partition. Warren agreeing to accept $3000 as a payment for the $4000 then due, of which sum J. Sennett was to pay $1500, Williams $1000, and Graham $500; the two latter paid their respective shares in cash. Sennett not being able to comply, Warren agreed to accept

his bond at eight months, with Graham and Williams as sureties, who agreed to join in the bond on condition Pardon Sennett would execute it as a principal. This was done. The judgment now in controversy was entered on this bond on April 5, 1842, by Warren against J. Sennett, P. Sennett, Graham, and Williams. The amount of the original purchase money, which was to be secured by J. Sennett, who was to take No. 1, was to be $6000, and separate bonds and mortgages were to be taken from the purchasers for their respective proportions of the debt. Shortly before the proposed sheriff's sale was made, Warren refused to convey to J. Sennett in consequence of an assignment made by him, and his want of means to comply with his agreement. With J. Sennett's consent, it was agreed that the deed for No. 1 should be made to Williams, J. Sennett having the privilege of paying within one year the amount due to Warren on lot No. 1, and the value of the improvements which should be made by Williams. Under this agreement, the sheriff's sale was made on May 5, 1842, and a deed by Warren to Williams, who on the same day entered, and continued ever since in possession. In December, 1843, Graham and Williams paid the $1500 on the judgment to Warren, and it was assigned to Warren's use, he being entitled to six-elevenths, and Graham to five-elevenths, the respective proportions of the amount paid by them. On the 20th April, 1842, Pardon Sennett and Lester purchased certain other lots from J. Sennett. These having been seized under the execution on the above-mentioned judgment, they made defence as terre-tenants under this state of facts.

On the trial, Warren filed a stipulation that on a verdict being found by which he could recover the $600 paid by him in satisfaction of the judgment, J. Sennett, his assignees or vendees, might, within six months, redeem No. 1, according to the original agreement.

The court (Church, P. J.) was of opinion, that Williams was not entitled to be subrogated as surety against these terre-tenants. That Warren, under the arrangement, could not have enforced the judgment against J. Sennett without first tendering a deed, which he had put out of his power by conveying to Williams. The effect of this was avoided by Sennett's consent; but that was after the conveyance to the present terre-tenants, and there was no consent by them. That there was an equity to compel satisfaction to be sought out of the land, or J. Sennett's equitable estate in the land, for which this was the consideration money, which estate had been retained by J. Sennett, after his sale to the terre-tenants, and that his subsequent agreement, with respect to that lot, could not deprive his vendees of

that equity. That Williams's equity, therefore, could not avail against the equities of the purchasers, but he was left to his legal rights against J. Sennett.

The errors assigned were, in charging, in substance, that the assignee could not enforce the judgment against the property of the principal debtor. 2. In taking the facts from the jury and charging them that the agreement was after the sale to the terre-tenants. (The time when this agreement was made, it will be observed, was not positively stated in the evidence, but it appears to be assumed by the court, that until the conveyance in execution of the agreement, which was subsequent to the sale, there was an equity in the purchasers to have execution levied on J. Sennett's equitable interest in the first instance, and that it was this right which was by him given up at the date of the conveyance, without the assent of the purchasers, who at that time had acquired an interest therein.)

*Babbitt* and *Walker*, for plaintiff in error. Williams, though a party defendant, has a right as surety having paid the debt, to use the judgment against the principal debtor and all his lands, on which it was a lien. This right of subrogation, though questioned by Mr. Justice Story in his Treatise on Equity, is settled by a series of decisions, referred to in Croft *v.* Moore, 9 Watts, 451, to exist in Pennsylvania, not only against the debtor himself, but also against subsequent purchasers and judgment creditors. There is no question, that Williams was but a surety; for though originally liable as principal, the purchasers had, by agreement among themselves, with the assent of Walker, substituted this obligation, which Williams executed as surety, and which was received as a cash payment by Warren.

It is said, the conveyance by Warren to Williams altered the relation of the parties, and converted Williams from a surety into a principal. No case cited establishes the proposition, nor is there any such rule in law or equity. The present defendant cannot complain, for by reason of the arrangements, the judgment for the original amount of purchase money in which all the parties were liable, and which bound the land of the defendant, was removed, and this smaller lien substituted as the only one affecting them.

2. The evidence left the time of the agreement between Warren, Williams, and J. Sennett, entirely uncertain as to its preceding or following the sale by Sennett to the defendants. If that was a material fact, as is assumed throughout by the court, there was clearly error in withdrawing it from the jury. Williams does not stand here as a purchaser of part of the land, seeking to throw the burden of

the judgment on another. By the sheriff's sale, of May 5th, his land was discharged of this judgment, which remained a lien on the property now in question. His rights to subrogation arose on the subsequent payment by him; hence, he may use that judgment as the original plaintiff might.

*Galbraith* and *Sill*, for defendants in error.—The case is one of subrogation, else the plaintiff has nothing upon which he can stand. In law, the judgment is satisfied and paid, and is no longer in existence. Williams and Graham, two of the defendants, having paid the judgment, it is paid as to all; and unless Williams can introduce the principle of subrogation in his own favour, it cannot be kept alive for his benefit. Between joint principal debtors there is no right of subrogation. 2 Penna. Rep. 379. Although by this court it is settled in 9 Watts, 451, there may be, between co-sureties.

That the right of subrogation is one of pure equity, of mere benevolence, has been frequently ruled by this court. 8 Watts, 384. We contend, that Williams, the plaintiff here, does not stand in the relation of surety, so as to be entitled to this equitable interposition, for two reasons.

1. Because the bond of $1500, upon which this judgment was entered, was taken in part discharge of the original debt of $20,000, due to Warren, the legal plaintiff, in which Williams was principal.

2. Because, although at the time the bond was executed, on the 4th April, 1842, when the arrangement was, that the deed for allotment No. 1, of lot 2045, should be made to James S. Sennett, Williams signed as surety only, and under that arrangement was so; yet, by the change in the arrangement, consummated on the 5th May, 1842, by which the deed for allotment No. 1 of lot No. 2045 was made to Williams himself, he became a principal debtor, having received the consideration for which the bond was given. These positions are supported by 2 Penna. Rep. 173, 296; 3 Penna. Rep. 200; 1 Story Eq. sec. 636, note, 645; 5 Rawle, 106; 8 Watts, 384; 1 Watts & Serg. 155; 2 Miles, 273; 7 Watts & Serg. 99; 10 Serg. & Rawle, 399.

There was a good consideration for Williams becoming a surety in this bond. He was bound as principal for the payment of $20,000. From this liability he was released by the new arrangement, and only remained liable for his own part and his proportionate part of $3000. When a change is made in a contract, without the knowledge of the surety and to his injury, he is discharged. Pardon Sennett was discharged on this ground. They also cited, Day *v.* Lowry, 5 Watts, 412, and Himes *v.* Keller, 3 Watts & Serg. 401.

*Oct.* 5.    GIBSON, C. J.—This case has been so complicated with unnecessary pleadings, and so loaded with superfluous details, that, for the sake of perspicuity, it is necessary to clear it of them.    In substance it is this.    J. S. Sennett, Williams, Cochran, and Graham, purchased a lot from Warren, paid part of the purchase money, and gave bond with warrant, on which judgment was entered for the rest. They made partition among themselves, and agreed to pay separately for their shares, Warren taking back the legal title he had conveyed to them, and reconveying separately to them their respective shares : an arrangement he sanctioned by purchasing back the title on his own execution.    At the day for the final execution of it, however, J. S. Sennett was unable to perform his part of it ; and the judgment before us, in which he and P. Sennett appear as principals, with Williams and Graham as sureties, was taken as so much cash ; but the deed for his part was made to Williams, with an understanding that he might redeem it by payment within a year.    He never did redeem it, and Williams, who paid the judgment, and now is the absolute owner of the property, insists on being substituted for Warren, and on having the judgment levied for his use on two other lots bound by it, but subsequently sold by J. S. Sennett to P. Sennett and Lester.

It is evident, at a glance, that this cannot be done.    To sell these lots for J. S. Sennett's debt, after Williams had become the owner of his property and the principal debtor for it, would compel third parties to put just so much of their proper money into his pocket. What is his supposed equity?    He went into the judgment as a surety, but under an arrangement which might, and eventually did, make him the purchaser of the property and principal debtor ; for it was no part of the bargain that he was to get the property, and that any one else was to pay for it..    What is the money which he attempts to extract from these two lots ?    It is the price which he paid for property of which he now is the absolute owner, and which, were he to succeed, he would get for nothing.    When he took J. S. Sennett's place in the purchase, he took not only his property but his responsibilities, and he consequently ceased to be a surety ; for that a surety may, in the course of events, become a principal, is shown by the Bank of Pennsylvania *v.* Winger, 1 Rawle, 303.    On that ground there is an end of his equity ; and there is still another on which it must fail.    J. S. Sennett himself, having sold the two lots to P. Sennett and Lester, could not have demanded to have the judgment executed on them in ease of himself and to the prejudice of his vendees.    The principle of Nailer *v.* Stanley, 10 Serg. & Rawle,

450, shaken for a time by The Corporation *v.* Wallace, 3 Rawle, 109, but more firmly established than ever by the decision in Cowden's Estate, 1 Barr, 279, is directly applicable to the case, and decisive of it ; for Williams stands in the place of J. S. Sennett, and is, consequently, affected by whatever would affect him. Did he even retain his character of surety, there would be equity against equity; and the judgment would stand discharged by actual payment at law.

Judgment affirmed.