# McDevitt & Hays's and Kitchenman's Appeal.

1. D. owned land in Philadelphia and Chester county. C. entered a judgment against him in Philadelphia, September 21st, which by transfer became a lien in Chester county, September 22d 1868. H. entered a judgment in Philadelphia, December 26th 1868. M. recorded a mortgage in Chester county, December 9th 1869. K. entered a judgment in Philadelphia, December 15th 1869, which by transfer became a lien in Chester county, December 16th 1869. On the 9th of April 1870, C. assigned his judgment with its liens to H. On the 6th of June 1870, the sheriff sold D.'s land in Philadelphia for enough to pay C.'s judgment. On the 22d of October 1870, the sheriff sold D.'s land in Chester county for enough to pay C.'s judgment. The proceeds of the sale in Philadelphia being in the sheriff's hands, the proceeds in Chester county were called into court for distribution. Held, that they were properly awarded to C.'s judgment assigned to H.

2. When a defendant's property is sold under execution, and the proceeds paid to the sheriff, it is a discharge of the debtor to that amount.

3. A sale of property and receipt by the sheriff are not, per se, satisfaction of any particular encumbrance, although its lien may be extinguished.

4. A creditor having two funds subject to his encumbrance, may pass by the first, and come upon the second, dependent however upon the equities amongst the junior lien-creditors.

5. Benner v. Phillips, 9 W. & S. 20; McGinnis's Appeal, 4 Harris 445, distinguished.

January 16th 1872. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

[McDevitt & Hays's Appeal.]

Appeal from the decree of the Court of Common Pleas of *Chester county:* In the distribution of the proceeds of the sheriff's sale of the real estate of Edward Devlin, deceased: No 103, to July Term 1871.

The defendant, Edward Devlin, owned real estate in Chester county, on which there was a mortgage in favor of Alexander Maybin for $1936.59, the lien of which dated from May 11th 1867. He owned real estate also in the city of Philadelphia.

On the 21st of September 1868, judgment was entered against him in the District Court of Philadelphia, in favor of Claghorn, Herring & Co., for $3706.50. This judgment was certified to Chester county, and on the 22d of September became a lien on Devlin's real estate there. On the 26th of December, H. L. Carson & Sons obtained a judgment in the District Court of Philadelphia against Devlin for $6000.

On the 9th of December 1869, Hay & McDevitt recorded a mortgage in Chester county for $2000 in their favor against Devlin.

On the 15th of December 1869, James Kitchenman obtained a judgment in the District Court of Philadelphia against Devlin for $6783.20. This judgment was certified to Chester county, and became a lien on Devlin's real estate there December 16th 1869. There were other liens against Devlin in Chester county which do not bear upon the question of distribution.

On the 9th of April 1870, Claghorn, Herring & Co., assigned their judgments and liens, in both Philadelphia and Chester county, to Carson & Sons.

Under Kitchenman's judgment Devlin's property in Philadelphia was on the 6th of June 1870, sold by the sheriff for $4000; the proceeds remained in the sheriffs' hands. The land of defendant in Chester county was sold under the Claghorn judgment (assigned to Carson), on the 27th of October 1870, for $5900; this money was paid into court.

At the time of these sheriff's sales, the liens against Devlin, both in Philadelphia and Chester county, interested in the distribution were as follows:

1867. May 11th.          Alexander Maybin,     .     . $1936.59
1868. September 21st. Claghorn, Herring & Co., ⎫
                        District Court of Philadel- ⎪
                        phia. ⎪
"     "    22d. Same transferred to Common ⎬ $3706.50
                        Pleas of Chester county ⎪
                        (assigned to Carson & Co.,) ⎭
"  December 26th. H. L. Carson & Sons, District
                        Court of Philadelphia     .          6000.00
1869 December 9th. Hay & McDevitt, mortgage in
                        Chester County     .     .     2000.00

[McDevitt & Hays's Appeal.]

1869 December 15th. James Kitchenman, District Court of Philadelphia
" 　　" 　　16th. Same transferred to Common Pleas of Chester county   $6.783.20

The distribution in Chester county was referred to Alfred P. Reid, Esq., as auditor.

No question was raised before him as to the right of Maybin's lien to be first paid out of the fund.

Before the auditor in Chester county, Hay and McDevitt and Kitchenman claimed to be paid out of the fund there; taking the ground that the judgment of Claghorn, Herring & Co. (assigned to Carson) had been satisfied by the previous sale of the defendant's real estate in Philadelphia.

The auditor, however, awarded the fund to Claghorn & Co.'s judgment assigned to Carson.

Exceptions were filed to the auditor's report and it was confirmed by the Court of Common Pleas. Butler, P. J.

McDevitt & Hays and Kitchenman appealed to the Supreme Court and assigned the confirmation for error.

*A. S. Letchworth* and *Porter* (with whom was *R. E. Monaghan*), for appellants.—The principle that where the equities are equally balanced the legal course of execution is not disturbed, is not to be used to overthrow the equity of another person, and thus work injustice: Ziegler *v.* Long, 2 Watts 205. Subrogation of the surety will not be permitted to work injustice to the rights of others: Erb's Appeal, 2 Penna. Rep. 296; McGinnis's Appeal, 4 Harris 445; Chancellor Kent, 5 Johns. 546; Goswiler's Estate, 3 Penna. Rep. 200. If neither party can invoke the equitable interference of the court, they are remitted to their legal rights; and the legal course of execution will not be disturbed: Miller *v.* Jacobs, 3 Watts 477. The execution in Philadelphia being several months prior to that in Chester county, fixed the rights of the claimants upon that fund, which could not be disturbed except by the application of the equitable principle above mentioned. The fund in Philadelphia is more than sufficient to pay the Claghorn, Herring & Co. judgment, which is the first lien upon it. When the money goes into the hands of the sheriff, *it is a payment* of the amount for which it is sold, whether it ever reached the creditor or not. He must look to the application of the purchase-money: Benner *v.* Phillips, 9 W. & S. 20; The Penna. Bank *v.* Winger, 1 Rawle 295.

*J. Perdue* and *J. D. Rodney*, for appellees.—If a creditor has two funds, he shall not take his satisfaction out of that fund upon which another creditor has no lien: Lanoy *v.* Athol, 2 Atk. R. 445; Atty.-Gen. *v.* Tyndal, 2 Amb. 615; Aldrich *v.* Cooper, 8

Vesey 391; Cheeseborough *v.* Millard, 1 John. Ch. 412; Bank of Penn'a *v.* Winger, 1 Rawle 295; Ramsey's Appeal, 2 Watts 228; Hasting's Case, 10 Id. 303; Ziegler *v.* Long, 2 Id. 205; Del. & Hud. Coal Co.'s Appeal, 2 Wright 512.

The opinion of the court was delivered, January 29th 1872, by

AGNEW, J.—Primarily the decision of this case rests on the question whether the sale of the property of Edward Devlin in Philadelphia, under the judgment of James Kitchenman, was a satisfaction of the judgment of Claghorn, Herring & Co. Benner *v.* Phillips, 9 W. & S. 20, is cited by the appellants as an authority that a sale of land by the sheriff "is a payment of the amount for which it is sold; whether it ever reached the pocket of the creditor or not. He must look to the application of the purchase-money." This is certainly true as to the debtor, and that is the sense in which the language is to be understood. When the property of the defendant in the judgment, real or personal, is sold under execution, and the proceeds paid into the hands of the sheriff, it is a discharge of the debtor's estate to that amount; but what creditor's debt it will extinguish is a question to be settled only by the final distribution and appropriation. It is that alone which determines what creditor shall be thrown upon the fund, or shall suffer the loss if he passes it by. Universal practice and numerous authorities prove that the sale and receipt of the money by the sheriff are not *per se* a satisfaction of any particular encumbrance, though the *lien* of it may be extinguished. Hence it has been held over and over again that a creditor having two funds subject to his encumbrance, may pass the first by and come in upon the second for payment; a thing he could not do were the fund first brought into distribution a satisfaction of his debt. Whether he will be permitted to do this, or, having done it, whether a junior encumbrance will be permitted to stand in his place by subrogation, will depend upon the equities among the lien-creditors which ought to prevail. The following cases abundantly support these positions: Bank of Pennsylvania *v.* Winger, 1 Rawle 295; Addams *v.* Hefferman, 9 Watts 529; Hastings's Case, 10 Id. 303; Ziegler *v.* Long, 2 Id. 205; Konigmaker *v.* Brown, 2 Harris 269; City of Philadelphia *v.* Cooke, 6 Casey 56; Del. & Hud. Canal Co.'s Appeal, 2 Wright 512; Cummins's Appeal, 9 W. & S. 73.

This brings us, therefore, to the question, what the equities of the parties are, and on this secondary consideration the decision must rest. As it regards the fund for distribution, it is conceded that the judgment of Claghorn, Herring & Co. is the first lien. It is also the first lien on the funds in Philadelphia county. The case stands thus: The judgment of Claghorn, Herring & Co. was entered first in Philadelphia on the 21st of September 1868, and

in Chester county by exemplification filed September 22d 1868. Carson & Co. entered their judgment in Philadelphia on the 26th of December 1868. James Kitchenman, one of the appellants, entered his judgment in Philadelphia on the 15th of December 1869, a year after the entry of the Carson & Co. judgment. He tranferred it by exemplification to Chester county on the 16th of December 1869. The mortgage of Hay & McDevitt, the other appellants, was recorded in Chester county on the 9th day of December 1869, nearly a year also after the entry of the Carson & Co. judgment in Philadelphia. It is obvious, from this state of facts, that when Carson & Co.'s judgment was entered in Philadelphia the case stood thus: Claghorn, Herring & Co. had two funds to resort to—one in Philadelphia and the other in Chester county. Had a sale then taken place, there could have been no conflict of interests whatever. Carson & Co. having but a single fund to look to, could have compelled Claghorn, Herring & Co. to take their judgment out of the Chester county fund, and thus realized their own out of the Philadelphia fund, or could have been subrogated to Claghorn, Herring & Co., which would have been the same thing in effect. Having this right in equity, it is clear that they had a right to accomplish the same result by their own act, and therefore could take an assignment of the judgment of Claghorn, Herring & Co., and take payment of it out of the fund in Chester county, and thus lift off the Philadelphia fund the encumbrance of the Claghorn, Herring & Co. judgment, and let themselves in upon that fund: Miller v. Jacobs, 3 Watts 477 ; Bank of Pennsylvania v. Winger, *supra ;* Hasting's Case, *supra ;* Del. & Hud. Canal Co.'s Appeal, *supra.* Now, it is not 'to be doubted, that the recording of Hay & McDevitt's mortgage, and the entry of Kitchenman's judgment a year later, could not alter the *status* of the Carson & Co. judgment so as to compel them to suffer a loss, which they were not obliged to sustain when their judgment was obtained. Some of the cases already cited support this position, and it is obviously so in equity. On what principle of law or equity, therefore, can the appellants whose later encumbrances were subject to the prior rights of Carson & Co., ask us to deny their right as assignees of Claghorn, Herring & Co., to take the fund in question out of court? Had the assignment been obtained to frustrate equity and not to advance it, perhaps a different question might arise, but the facts here disclose no such question. McGinnis's Appeal, 4 Harris 445, is not opposed to this conclusion. McGinnis failed to have himself subrogated to the judgments of McLanahan in Cumberland county, which took the fund from him in that county. Had he been subrogated in Cumberland county it is obvious that the judgments of McLanahan, which were first also in Franklin county, could be shown there to be satisfied only by the record in Cumberland county.

But by the subrogation on the same record in Cumberland they would stand upon the record still open and unpaid in equity, and would therefore be entitled to take the fund in Franklin county, for McGinnis the equitable plaintiff by the subrogation.

But when McGinnis went into Franklin county, and there asked his Cumberland county judgment to be subrogated to McLanahan's in Franklin county, he was met by the declaration that the court would not undertake to settle claims not within their jurisdiction, and his application failed. Whether this was a good reason it is unnecessary to say, or whether the doctrine of equity is correctly stated in the opinion is unimportant, as the case differs from this in the material fact mentioned. Here Carson & Co. go into Chester county with an actual assignment of Claghorn, Herring & Co.'s judgment, and their equity, as we have seen, is superior to that of either of the appellants.

The record of the judgment of Claghorn, Herring & Co. in Philadelphia affords no evidence of satisfaction there, and the equity of Carson & Co. as prior encumbrancers entitled them to call upon Claghorn, Herring & Co. to take their payment out of the Chester county fund.

Upon the whole case, finding no error in the distribution made by the Court of Common Pleas of Chester county, the decree is affirmed with costs to be paid by the appellants, and the record is ordered to be remitted to the court below for distribution according to the decree.